UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Melvin Hubbard,                                    Case No. 3:13 CV 2834

    Plaintiff,                                 JUDGE JAMES G. CARR

  v.
                                                     OPINION AND ORDER

Neil Turner, Warden,

    Defendants.

*Pro se* Petitioner Melvin Hubbard filed the above-captioned Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Hubbard is currently incarcerated in the North Central Correctional Institution, having been convicted on August 21, 2013, of receiving stolen property and breaking and entering. He was sentenced to two and a half years of incarceration. He asserts two grounds for relief: (1) Judge Ruth Ann Franks, while presiding over his case, was acting in a ministerial capacity and not a judicial capacity and therefore lacked the congressional delegation of power under Article III of the United States Constitution to enter a guilty finding and sentence him; and (2) the Lucas County Court of Common Pleas lacked congressional delegated authority to execute the judgment entered against him because the judge acted in a ministerial capacity and therefore he was denied due process. He seeks immediate release from prison.

**I. Background**

Hubbard's Petition contains few facts and is composed entirely of legal rhetoric. He pled

guilty to charges of receiving stolen property and breaking and entering on July 25, 2013. He was sentenced on September 5, 2013, to eleven months on count one and seventeen months on count two. The two sentences were ordered to be served consecutively. He did not appeal his conviction or his sentence.

Instead, he filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. He asserts two grounds for relief. First, he states:

> County Common Pleas Court Judge, Ruth Ann Franks, while acting to enforce or administer State statutory laws in connection to criminal case #CR-0201301957, regarding the criminal offenses of Breaking & Entering & Rec, Stol. Property, violation of O.R.C. §'s (2911.13) et seq. & 2913.51 et seq. was acting as a "ministerial officer" in an [sic] Ministerial Capacity, not in a Judicial Capacity & lacking the required Congressional Delegation of judicial jurisdiction, authority or power to enter a finding of guilty against the petitioner, or to convict, sentence or imprison me, the Petitioner, as all acts committed by Judge Ruth Ann Franks, are by virtue of the U.S. Constitutions Supremacy Clause of Art (VI) § (I)&(II), considered "void ab initio."

(Pet., Doc. 1, at 5). He explains that the Ohio statutes under which he was convicted are "not pursuant to the Supremacy Clause." (Pet., Doc. 1, at 5). He cites to two purported cases, "Asis v. U.S., 568 F.2d. 284 " (full citation not provided), and "*Burns v. Sup. Ct.,* 140 Cal. (1)" (full citation not provided). He claims that *Asis* stands for the proposition that a "judge ceases to sit as a judicial officer because the governing principle of administrative law provides that courts are prohibited from substituting their evidence, testimony, record, arguments, and rationale for that of the agency." (Pet., Doc. 1, at 8). He contends *Burns* held that "ministerial officers are incompetent to receive grants of judicial power from the legislature and their acts in attempting to exercise such power are nullities." From this, he concludes that Judge Franks was acting as a ministerial officer when she presided over his criminal prosecution, because she had not been delegated judicial powers by

Congress under Article III of the United States Constitution. He asserts that as a ministerial officer, she had no authority to convict or sentence him and his conviction is void.

His second ground is similar to his first. He states:

> The petitioner hereof, believes that cause exist [sic] to show that the Lucas County Trial Court, of the case subjudice, was without any form of the required jurisdiction, as required via United States Constitution of America, Article (VI)§(I)§(II) in which to prosecute, convict, sentence, or imprison my natural person, while acting as a ministerial officer, administering and or enforcing state statutory law violations, committed by the petitioner under criminal case # CR-0201302957 and also as said County Trial Court, of the case sub-judice, did not possess the 'vested congressional delegation of judicial jurisdiction, judicial authority, judicial power while acting as a ministerial officer, as above mentioned to execute any form of judicial processing of my natural person due to the fact that ministerial officers lack judicial capacity to act as judicial officers of any fashion. Therefore, in clear violation of the petitioner's (4th & 5th &14th) U.S. Const., Amendment rights, to Due Process & Equal Protection of the law, notwithstanding the petitioner's right & protection against unreasonable seizure of my natural person.

(Pet., Doc. 1, at 11). He reiterates the same basic rhetoric he espoused in his explanation of his first claim.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, was signed into law on April 24, 1996 and applies to habeas corpus petitions filed after that effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see Woodford v. Garceau*, 538 U.S. 202, 210 (2003); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, and 'to further the principles of comity, finality, and federalism.'" *Woodford*, 538 U.S. at 206 (citing *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). Consistent with this goal, when reviewing an application for a

writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774-76 (6th Cir. 2008). The Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal court, therefore, may not grant habeas relief on any claim that was adjudicated on the merits in any state court unless the adjudication of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Wilkins*, 512 F.3d 768, 774 -76 (6th Cir. 2008).

A decision is contrary to clearly established law under § 2254(d)(1) when it is "diametrically different, opposite in character or nature, or mutually opposed" to federal law as determined by the Supreme Court of the United States. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). In order to have an "unreasonable application of ... clearly established Federal law," the state court decision must be "objectively unreasonable," not merely erroneous or incorrect. *Id*. at 409. Furthermore, it must be contrary to holdings of the Supreme Court, as opposed to dicta. *Id.* at 415.

A state court's determination of fact will be unreasonable under § 2254(d)(2) only if it represents a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). In other words, a state court's determination of facts is unreasonable if its finding conflict with clear and convincing evidence to the contrary. *Id.* "This standard requires the federal courts to give considerable deference to state-court decisions." *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). AEDPA

essentially requires federal courts to leave a state court judgment alone unless the judgment in place is "based on an error grave enough to be called 'unreasonable.'" *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

### III.  Procedural Barriers to Habeas Review

Before a federal court will review the merits of a petition for a writ of habeas corpus, a petitioner must overcome several procedural hurdles. Specifically, the petitioner must surmount the barriers of exhaustion, procedural default, and time limitation.

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see Baldwin v. Reese*, 541 U.S. 27 (2004). Exhaustion is fulfilled once a state supreme court provides a convicted defendant a full and fair opportunity to review his or her claims on the merits. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

To be properly exhausted, each claim must have been "fairly presented" to the state courts. *See e.g. Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir. 2003). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. *Wagner*, 581 F.3d at 414. Specifically, in determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, courts should consider whether the Petitioner : 1) phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; 2) relied upon federal cases employing the constitutional analysis in question; 3) relied upon state cases employing the federal constitutional analysis in question; or 4) alleged "facts well

within the mainstream of [the pertinent] constitutional law." *See Hicks v. Straub,* 377 F.3d 538, 553 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  For the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law.  *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).  Moreover, the claim must be presented to the state courts under the same legal theory in which it is later presented in federal court.  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  It cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court.  *Id.*   This does not mean that the applicant must recite "chapter and verse" of constitutional law, but the applicant is required to make a specific showing of the alleged claim. *Wagner,* 581 F.3d at 414.

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address because the Petitioner did not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, the state judgment is not based on a resolution of federal constitutional law, but instead "rests on independent and adequate state procedural grounds."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir.1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state procedural grounds for a state court decision absent a clear statement to the contrary.  *See Coleman*, 501 U.S. at 735.

To determine if a claim is procedurally defaulted, the court must determine whether: 1) there

is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; 2) whether the state courts actually enforced the state procedural sanction; and 3) whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). A claim that is procedurally defaulted in state court will not be reviewed by a federal habeas court unless a petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *See Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). If a petitioner fails to show cause for his procedural default, the Court need not address the issue of prejudice. *See Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review only federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

### IV. Analysis

Petitioner acknowledges that he did not exhaust his state court remedies with respect to either claim. He contends to do so would be futile because there is no adequate state corrective process or remedy available. This Court disagrees. Petitioner entered an *Alford* plea to the charges against him pursuant to a plea agreement. He did not contest the trial court's jurisdiction at that time. He did not file a direct appeal of his conviction to challenge the trial court's jurisdiction. He had

available remedies in the state courts which he did not pursue.

As explained above, a petitioner cannot obtain federal habeas relief unless he has completely exhausted his available state court remedies to the state's highest court. *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); 28 U.S.C. § 2254(b)(1)(A). The United States Supreme Court has emphasized that the "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claim," since "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Rhines v. Weber*, 544 U.S. 269, 273-74 (2005) (citations omitted). Accordingly, where a habeas petition contains unexhausted claims, there is a "strong presumption" in favor of requiring a petitioner to pursue his available state remedies. *Granberry v. Greer*, 481 U.S. 129, 131 (1987); *see O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996) (stating that "the Supreme Court has been quite clear that exhaustion is the preferred avenue and that exceptions are to be for narrow purposes only").

Nevertheless, a habeas court need not wait for a petitioner's claims to be exhausted if it determines that a return to state court would be futile. Where the federal constitutional claim is plainly frivolous and it would be a waste of time and judicial resources to require exhaustion, exhaustion may be excused. *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991). The claims in this petition are frivolous and have no chance of success on the merits. Exhaustion therefore is not required. *Id.*

Petitioner's two grounds for relief are nothing more than legal rhetoric. Petitioner relies solely on quotations which do not exist, which are based on similar statements taken entirely out of context from cases which are not properly cited, and which are irrelevant to a state criminal

proceeding.

While the Court has been unable to find a case titled,*"Asis v. U.S.*, 568 F2d 284," it did locate a case titled *American Iron and Steel Institute ("AISI") v. E.P.A.*, 568 F.2d 284 (3d Cir. 1977). The case concerns a decision of the Environmental Protection Agency to exempt point sources located in Mahoning Valley of Pennsylvania from effluent limitations based on best practicable control technology currently available (BPCTCA). While the quotation from this case cited by Petitioner is not actually found anywhere in the decision, the Third Circuit stated something similar:

> The Companies have also argued that EPA did not properly evaluate the costs and benefits relevant to identifying the BPCTCA. In evaluating these arguments, we must follow the familiar standards governing judicial review of agency action under the A[dministrative] P[rodecures] A[ct]. Section 706 of the APA provides that "(t)he reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . ." As the Supreme Court said in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971), an agency's "decision is entitled to a presumption of regularity. But that presumption is not to shield (its) action from a thorough, probing, in-depth review." In conducting this review, we will not overturn agency action because the underlying reasoning is not fully set forth, if we can fairly discern the basis for the action. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285-86 (1974). But the touchstone of our review, both as to the Agency's consideration of the issues and the factual predicates of this consideration must be the administrative record. <u>In deciding to accept or reject petitioners' contentions we must look "to the record that was considered by the agency not to post ad hoc rationalizations of counsel or even agency members and not to evidentiary materials that were not considered by the agency."</u>

*American Iron and Steel Institute v. E.P.A.,* 568 F.2d 284, 296 -97 (3d Cir. 1977) (emphasis added). It is apparent when placed into context and stated correctly, that the passage refers to a federal court's review of an EPA decision under the Administrative Procedures Act. It has no relevance to

-9-

a state court's authority to preside over a state criminal matter. Petitioner's reliance on this case is erroneous.

Similarly, Petitioner's reference to *Burns v. Superior Court of City and County of San Francisco,* 140 Cal. 1, 16 (Cal.1903), is misplaced. The quotation Petitioner cites from this case also does not exist. The case itself concerns a deposition in a civil action. A notary public issued a subpoena to the party being deposed. When that party did not appear for the deposition, the notary found the party to be in contempt of court and imposed a sanction against him. In deciding whether a notary public, as opposed to a judge, had the authority to impose such a sanction, the California Supreme Court held:

> It is suggested that the provisions of section 1991, Code Civ. Proc., give authority to the officer taking the deposition to punish, as for contempt, one who disobeys his subpoena, or refuses to be sworn or to testify, and that, as two punishments for the same offense cannot be allowed, the scope of section 1209 must be so limited as not to include proceedings to take depositions as 'proceedings of the court.' If the part of section 1991 purporting to give such power to the officer could be considered valid and constitutional, there would be force in the suggestion. But we are of the opinion that the Legislature cannot thus dispose of the judicial power of the state. The Constitution separates the powers of government into three departments—legislative, executive, and judicial (article 3, § 1), and the judicial power is vested in certain specified courts (article 6, § 1). There are some decisions of this court, and many in other states, indicating that, notwithstanding such constitutional limitations, the Legislature may vest some powers of a quasi judicial nature in ministerial officers [such as Notary Publics]. *Boyer v. Superior Court*, 110 Cal. 401, 42 Pac. 892; *Kreling v. Kreling*, 116 Cal. 458, 48 Pac. 383; *Cahill v. Colgan* (Cal.) 31 Pac. 614; *Lambert v. Bates*, 137 Cal. 676, 70 Pac. 777. The Constitution itself authorizes the appointment of court commissioners to perform some of the duties of the judges of the superior courts (article 6, § 14), and there will always be some difficulty in determining whether or not, in any particular case, a power vested by law otherwise than in a court comes within the category of judicial power which is delegated exclusively to the courts. But, however this may be in other cases, we are not

> <u>disposed to give the Constitution a construction which will allow ministerial officers to be invested with power to punish individuals by fine and imprisonment. Such power involves the personal liberty of the citizen, and is in its nature a judicial power of the highest degree. It cannot be exercised except after due process of law, and this implies that it must be vested in some court in all cases except those where the Constitution either expressly or by necessary implication vests it elsewhere.</u>

*Burns*, 140 Cal. at 12-13 (emphasis added). Again, when placed into context and quoted correctly, the case does not stand for the proposition for which it is cited, and in fact, supports the opposite contention. It actually supports the authority of judges to punish individuals by fine and imprisonment. Petitioner was not convicted and sentenced by a ministerial official such as a notary public. He was convicted and sentenced by a duly elected Common Pleas Court Judge. *Burns* has no bearing on whether an Ohio Common Pleas Court Judge has authority under Ohio law to preside over a criminal prosecution.

The remainder of Petitioner's arguments are nothing more than unsupported legal conclusions based loosely on the fictitious quotations from the cases he cited. He concludes that the Common Pleas Court Judge that presided over his criminal case was a ministerial officer because she did not receive her appointment to the bench under Article III of the United States Constitution. Only federal judges receive their grant of authority under Article III. State court judges receive their grant of authority under the State constitution and Ohio statutes. A duly elected Common Pleas Court Judge is not a ministerial officer. He or she is a judicial officer with all of the authority granted by the State of Ohio. Petitioner has not alleged any facts or provided any credible legal precedent to suggest Judge Franks lacked authority to preside over his criminal trial or to sentence him. His grounds for relief are without merit and are denied.

## IV. Conclusion

Accordingly, the Petition (Doc. No. 1) is denied and this action is dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

IT IS SO ORDERED.

/s/ James G. Carr
Sr. United States District Judge